SCHNELLMANN, Appellant, v. THE SOUTHERN COMMERCIAL AND SAVINGS BANK, Garnishee, Defendant; SCHNELLMANN, Respondent.

St. Louis Court of Appeals, February 19, 1907.

**HUSBAND AND WIFE:** Garnishment: Interpleader. Where the wife interpleaded for a fund in the hands of a garnishee who had been summoned as such under an execution against the husband, and it was shown that the fund was deposited with the garnishee bank to the joint credit of the husband and wife as the proceeds of the saloon business in which the husband was engaged, that the wife had advanced money to her husband for the purpose of purchasing the saloon fixtures, under an agreement between them that she was to receive all proceeds, pay all bills and keep the overplus until the money advanced by her should be repaid, the wife had such an equitable interest in the fund as to protect it from the garnishment proceeding to collect a prior judgment against the husband.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*Kortjohn & Kortjohn* for appellant.

(1) A fund deposited in joint names of husband and wife is, prima facie, the joint property of both in equal shares. State ex rel. v. Brady, 53 Mo. App. 202; Armstrong v. Johnson, 93 Mo. App. 492. (2) Even if the business belonged to the wife, permission of the wife for the husband to conduct it as his own, as between a creditor and the wife, estops her from claiming the same as her own. Leete v. Bank, 115 Mo. 204.

*Albert Burgess* and *Bass & Brock* for respandent.

(1) The fund deposited in bank, although prima facie the joint property of appellee and defendant, under

the evidence and the law of this case, is shown, by the evidence, to be wholly the property of appellee only. (2) Appellee never gave this money to her husband; it was never reduced to his possession with the express assent of his wife in writing; nor was any full authority given him to dispose of the same for his own use and benefit. R. S. 1899, sec. 4340; Grocer Co. v. Ballinger, 137 Mo. 369. (3) No part of the fund in controversy, then, is the property of the defendant and he could not successfully claim it as his as against his wife; nor can the judgment creditor in this case have any claim to the fund superior to defendant, as there is no evidence that the judgment debt was in any way induced or created by any act or acts of the appellee in allowing her husband to have possession of her property. McClain v. Abshire, 72 Mo. App. 395; De Berry v. Wheeler, 128 Mo. 84. (4) The question of whether or not the title to the fund in controversy belongs to appellee is mainly one of fact. If there is any conflicting evidence on this point, inasmuch as the trial court sittting as a jury has found the issue against the appellant, this court should not interfere. State ex rel. v. Brady, 53 Mo. App. 207.

BLAND, P. J.—On March 8, 1897, in the circuit court of the city of St. Louis, plaintiff recovered a decree of divorce against her husband, Alois Schnellmann, and an allowance of six hundred dollars alimony in gross. On August 24, 1905, an execution was issued on the judgment for alimony, and the defendant, the Southern Commercial Savings Bank, was summoned as garnishee. The bank, by its answer, confessed that it had on deposit the sum of one hundred and eighty dollars and ninety cents to the joint credit of Alois and Mary Schnellmann, subject to be drawn upon by checks signed by either of them, and that it did not know whether the money was or was not the separate money of Alois Schnellmann, and asked leave to pay the fund into court and

to go hence with its costs. The court allowed the bank fifteen dollars for answering, received the balance of the fund on deposit and discharged the bank. Mary Schnellman interpleaded for the fund, and from a judgment in her favor the appeal was taken to this court. Mary and Alois Schnellmann were married in 1901.

The issues were submitted to the court sitting as a jury. The evidence tends to show that Alois Schnellmann had no property, real or personal, when he married Mary, but that she had six hundred dollars in cash and, a short time after the marriage, loaned Alois two hundred dollars with which to buy a saloon, situated on Tennessee avenue, in the city of St. Louis. Alois bought the saloon and run it for some time, but the business was unprofitable and the saloon was sold for two hundred dollars and the money paid to Mary to reimburse her for the loan she had made her husband. After the sale of this saloon, Mary and her husband looked up a location, with the view of starting another saloon, and selected No. 9401 South Broadway and rented the premises from the Lemp Brewing Company, who paid for a license issued to and in the name of Alois Schnellmann. Mary let her husband have two hundred dollars to buy fixtures, furniture, etc., for the saloon and the first stock of liquors, and subsequently let him have seventy-five dollars to pay saloon bills. Asked by the court what arrangement she had with her husband about paying back this money, she said: "I had no arrangement at all. I only says, 'If you make any money, you must let me have it, and I put it back and save it that I get my money back;' and he said 'All right, Mamma, I give you all the money and you take care of it and you pay out, and whatever is left on the side you take out for yourself again.'" That at the close of each day's business, the bartender handed her all the money taken in during the day and she put it away, and on the following morning gave him the necessary drawer change, and if there

was any over she deposited it in the bank to the joint account of herself and husband; that she bought all the liquors and supplies except beer, which was furnished by the Lemp Brewing Company, paid all the bills and drew and signed all checks against the bank account, signing her husband's name to the checks. She testified the deposits were made to joint account for two reasons, first, that she did not want people to think she was "bossing" her husband in his business, but to think "he was the man of the house;" and second, that if she should die he would be able to draw the money from the bank without trouble; that she intended, and it was so understood between her and her husband, that when she should be reimbursed from the proceeds of the business for the two hundred and seventy-five dollars advanced or loaned to her husband, the business should become solely that of her husband and he should manage it and do as he liked with it; that she had not received a dollar of the two hundred and seventy-five dollars, and the money in controversy was needed to pay a beer bill the saloon owed the Lemp Brewing Company.

The cashier of the bank testified that interpleader and her husband came to the bank together when the account was opened, and both requested that the account should be kept in their joint names; that the first deposit and all subsequent deposits were handed in by the interpleader and all checks drawn against the account were, including signatures, in the handwriting of the interpleader.

There was no countervailing evidence nor was the evidence of the interpleader in the least shaken by the long and searching cross-examination she was subjected to by plaintiff's counsel.

The court gave two declarations of law at the request of the interpleader, to the giving of which plaintiff objected and excepted at the time, and assigned the giving of said instructions as error.

The plaintiff gave no credit to Alois Schnellmann on the strength of the saloon license being in his name, or on the strength of the deposit in the bank, and hence has no equitable claim against the fund. On the evidence of the interpleader, it is made manifest that the arrangement between herself and husband, was that she should make all purchases of goods and supplies for the saloon, receive all the proceeds and pay all the bills, and keep the overplus, if any, until such overplus should be sufficient to reimburse her for the two hundred and seventy-five dollars she had advanced or loaned to her husband. This arrangement was adhered to and carried out and was in full operation at the time of the service of the garnishment, and shows that the interpleader had such an equitable interest in the fund as to protect it from garnishment proceedings to pay the prior debts of her husband. In this view of the law of the case, the judgment is so manifestly for the right party that it is wholly unnecessary to give any attention to the declarations of law given for plaintiff. The judgment is affirmed. All concur. *Goode, J.*, on the ground that the question of Mary Schnellmann's ownership of the fund was one of fact and the court gave correct declarations of law.