**Neville Marie NIEMAN, Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF JOPLIN,**
**Garnishee of Otto F. Nie-**
**man, Garnishee,**

**Hazel Nieman, Intervenor.**

**No. 24680.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Philip H. Schwarz, St. Joseph, for appellant.

Whitney Potter, Dale, Potter & Flynn, St. Joseph for garnishee.

Warten, Wells & Burden, Joplin for intervenor.

SPERRY, Commissioner.

Plaintiff, Neville Marie Nieman, had obtained a judgment against Otto F. Nieman, Jr., her former husband, for alimony, child support and attorney fees, which had accumulated to a claimed total of $1,407.75, including costs. She summoned First National Bank of Joplin, Missouri, hereafter referred to as garnishee, in an effort to collect that sum from assets of Otto F.

Nieman, Jr., in its custody. Mrs. Hazel Nieman, the widowed mother of Otto, intervened. She moved to dissolve the garnishment and to dismiss the proceedings. The judgment was that intervenor's motion to dissolve the garnishment be sustained, that garnishee be released, and that the proceedings be dismissed. Plaintiff appeals.

Answering plaintiff's "Interrogatories to Garnishee", the bank answered that: "At the time of service of garnishment, there was a savings account with garnishee in the names of Hazel or Carl H. Nieman or Otto F. Nieman, Jr., or Mrs. Clyde T. Love, Jr. Said account is designated as a joint account on the authorized signature card, a copy of which is attached hereto. According to the signature card Hazel Nieman, Carl H. Nieman, Otto F. Nieman, Jr., and Mrs. Clyde T. Love, Jr., are authorized to withdraw funds from said account. According to said signature card, said account was opened by Hazel Nieman on May 5th, 1959, and the other names were apparently added to the signature card on September 4th, 1959. * * *. At the time of service of garnishment the above account contained the sum of $1,706.74, and the sum of $1,407.75 is now being held in same".

Intervenor offered the testimony of Mr. Shy, assistant cashier of garnishee. He identified certain exhibits, which were offered and received in evidence, as being business records kept by garnishee. Exhibit One was identified by the witness as being a signature card for an individual savings account, opened in the name of Intervenor on May 5th, 1959, for the sum of $864.03. Exhibit Two was identified as being a signature card in the name of Hazel Nieman, or Carl Nieman, or Otto F. Nieman, Jr., or Mrs. Clyde T. Love, Jr., dated September 4th, 1959. The witness stated that a notation on the card indicated that this card makes a previous account joint and that "this account was originally opened on May 5th, 1959 for $804.03, Hazel Nieman". He stated that Hazel Nieman's genuine signature appears on both

cards, that Exhibit Two is the same card that is attached to garnishee's answer filed herein, and that it contains a social security number, as required by law, and which the witness stated, he presumed was that of Mrs. Nieman. (Mrs. Nieman, later, stated that it was her social security number). He stated that no other social security number appears on the card.

The witness identified Exhibit Three as being a part of garnishee's records and stated that it was a signature card in the name of Otto F. and Neville Marie Nieman, indicating an account opened September 30th, 1959, which had a balance of fifty-nine ($.59) cents. The witness identified certain exhibits, which were admitted in evidence, as being ledger sheets of the Hazel Nieman account, showing deposits and interest payments on the account. All interest payments were credited to intervenor.

Intervenor testified to the effect that the signatures on Exhibit Two were those of herself and her three children; that she established the account, originally, in her own name and with her own money; that she, later, caused the new account (Exhibit Two) to be opened by transferring the balance shown in Exhibit One to the new joint account shown by Exhibit Two; that she made all the deposits and withdrawals from the account; that all funds going into it represented her savings as an employee of the State of Missouri; that she was, and is, a widow. Plaintiff's counsel admitted that intervenor paid all income taxes on the account. Intervenor stated that: "I put the children's names on the account so if anything happened to me, in case of death, it could be their money and they wouldn't have to go through court".

The evidence in this case compels the conclusion that the entire amount shown in this account, by Exhibit Two, represents the personal savings and deposits made by intervenor, and that Otto F. Nieman, Jr., contributed nothing thereto. Indeed, there is no evidence or contention to the contrary.

However, plaintiff objected to the introduction of the oral testimony and Exhibits which establish these facts, and she contends that the admission of same constitutes error because of the rule that the terms of a written contract may not be varied by oral evidence or extrinsic circumstances. This contention must be denied.

■ In Jones on Evidence, Fifth Edition, Vol. 2, page 928 appears the following:

"PAR. 483. PERSONS AFFECTED BY PAROL EVIDENCE RULE— STRANGERS.—The rule excluding extrinsic evidence which is sought to be introduced for the purpose of affecting a written instrument is applied *only where the controversy is between the parties to the instrument or to their privies.* * * *". (Emphasis ours).

In Slinkard v. Lamb Const. Co. (Mo.App.) 212 S.W. 61 it was said:

"* * *. In view of the fact that defendant company is a stranger to the alleged contract of release and is not bound by it, the rule that in the absence of fraud, accident, or mistake, parol evidence is not admissible to vary the terms of a written contract, has no application. *That a third party or a stranger to a contract cannot invoke the rule is no longer open to question.* * * *". (Emphasis ours).

This decision was affirmed by the Supreme Court en banc, Slinkard v. Lamb Const. Co., 286 Mo. 623, 225 S.W. 352.

In Berry v. Royster, Mo.App., 232 S.W. 477, 479, this court said:

"The rule against contradicting, varying, or explaining a written contract does not apply to one who is not a party thereto".

In Schnellmann v. Southern Commercial & Savings Bank, 123 Mo.App. 188, 100 S.W. 575, plaintiff, the divorced wife of Alois Schnellmann, obtained a judgment against him for alimony. Execution was issued and the bank was summoned as garnishee. Mary Schnellmann, the second wife of Alois, interpleaded. Evidence was received tending to show that the joint bank account of Alois Schnellmann and his second wife Mary, consisted exclusively of money furnished by Mary. The court did not discuss the rule prohibiting varying the terms of a written contract but we note that plaintiff was a stranger to the contract involved. The judgment for Mary Schnellmann was affirmed. The court said (576):

"The plaintiff gave no credit to Alois Schnellmann on the strength of the deposit in the bank, and hence has no *equitable* claim against the fund. * * *. In this view of the *law of the case,* the judgment is so *manifestly for the right party that* it is wholly unnecessary to give any attention to the declarations of law given for plaintiff". (Emphasis ours).

Judge Goode concurred on the ground that the question of Mary Schnellmann's ownership of the fund *was one of fact,* and that the court gave correct declarations of law.

In Cordes v. Straszer et al., 8 Mo.App. 61, 63, the St. Louis Court of Appeals said:

"* * *.

"2 It is contended that the testimony of Reus, the maker of the mortage, was incompetent; that he should not have been permitted against the objection of plaintiff, to show that the amount of his indebtedness was not correctly set out in the deed. The rule that oral testimony is inadmissible to vary the terms of a written instrument is invoked. But this rule has no application here, because this is not a suit between the parties to the instrument. The rule was never intended to affect third parties. * * *".

■ In the case at bar, plaintiff is a stranger to the contract establishing the account which she seeks to have applied in payment of her judgment against one of the contracting parties. She cannot successfully invoke the rule upon which she relies. She cites and relies on what was said in Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817, 820. That decision is not applicable in this case. There a joint account had been established by a Mr. Crandall (deceased) and one Hattie Watts, deceased's

sister-in-law, nurse, and his survivor. Deceased's executor claimed the fund and offered evidence to prove that it consisted entirely of money belonging to and furnished by the deceased. The Supreme Court ruled that the terms of the written contract between Crandall, Watts and the bank could not be varied by introduction of extrinsic evidence. However, the executor, in that case, stood in the shoes of the deceased and the rule was, therefore, applicable. He was not, in law, a stranger to the contract.

■ We next consider whether plaintiff, who has a judgment against one, only, of four card signatories to a joint bank account, each having the right to withdraw therefrom and to take all as survivor, may subject that account to payment of her claim, where, as here, the debtor contributed nothing to the joint account. Plaintiff says this is a case of "first impression" in Missouri. In view of the decision in the Schnellmann case, supra, and what the court said in the course of its opinion, we cannot agree with that contention. While the court, possibly, might have reached the result it did reach on the ground that the joint account was in the name of a husband and wife, the court did not rest its decision on that ground. It tacitly approved of the trial court's action in hearing evidence concerning the establishment of the account and whose money was placed in it. It held squarely that plaintiff, in that case, had no *equitable* interest in the fund and was not entitled to recover any part of it to satisfy her judgment for alimony against her ex-husband. There is no material difference between the facts shown in that case and those appearing here.

In A.L.R. 3rd Series, Vol. 11, Annotation—Joint Bank Account as subject to Attachment—page 1465, l. c. 1470, par. b, it is said:

" * * *

"[b] PRACTICE POINTERS—

" * * *

"Comparison of the earlier cases dealing with the right of a creditor to invade a joint bank account in satisfaction of the debt of only one depositor with those decided in more modern times evidences increasing emphasis on the actual ownership of the funds in the account as the criterion for recovery by the creditor. Thus, while it may be an overstatement to say that such factors as the property rules governing joint tenancies generally, or the exact wording of the contract between the depositors and the bank, are unimportant, it is apparent that modern courts no longer regard them as controlling in any given case, and the attorney litigating in this area of law would do well to stress his showing that the funds in the account actually were (or were not, as the case may be) the property of the debtor depositor. In this connection, the presumptions of ownership which may exist in favor of or against the nondebtor depositor should not be overlooked, and the case should be built strongly enough to insure that the burden of proof resulting from the operation of such presumptions may be successfully carried. * * *".

Following the above, the author proceeds to discuss "General Principles of Law". Among decisions cited on the proposition that a creditor of one joint depositor may or may not garnish the account, the case of Schnellmann v. Southern Commercial & Savings Bank, supra, is cited. That case is authority for the proposition that the creditor of one joint depositor who, in fact, has no financial investment in the account, may not invade it to collect his judgment. That ruling controls this case and we approve of it.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.