LIBERTY MUTUAL INSURANCE COMPANY *vs.* ROBERT L.
WOLFE & others.[1]

Norfolk.    November 20, 1978. — March 21, 1979.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Insurance,* Cancellation, Motor vehicle liability insurance. *Notice,*
Cancellation of motor vehicle liability insurance.

Wilful avoidance of notice does not have the consequence of curing
defects which would otherwise render the notice invalid. [265]
The amendment of G. L. c. 175, § 113A(2), by St. 1973, c. 405, regulat-
ing the content of automobile insurance policies with respect to
notice of cancellation, was not applicable to a notice of cancellation
mailed after the effective date of the act where the policy had been
issued before the effective date. [265-267]

CIVIL ACTION commenced in the Superior Court on
April 15, 1975.

The action was heard by *Lynch,* J.

*Isaac Prager (Joseph D. Wishnow* with him) for Robert
L. Wolfe.

*Stephen T. Keefe, Jr.,* for the plaintiff.

ARMSTRONG, J. The plaintiff (Liberty) sought and ob-
tained in the Superior Court a declaration that its pur-
ported cancellation of the defendant Wolfe's automobile
insurance policy on October 26, 1973, was valid and that,
in consequence, it has no obligation to defend Wolfe in a
pending action for wrongful death and conscious suffer-
ing.

---

[1] George R. Darling, administrator of the estate of Evelyn A. Dar-
ling, a pedestrian who was struck on November 15, 1973, by the car
of the defendant Wolfe, and Sentry Insurance Co., which appears to
have written the victim's uninsured motorist coverage.

The findings of the trial judge concerning the circumstances of the cancellation are not disputed. Wolfe purchased his 1973 policy from Liberty on an instalment plan, and by at least August 8 he had fallen behind in his payments. On October 1, by certified mail, return receipt requested, Liberty sent the statutory notice of cancellation (G. L. c. 175, § 113A[2]) to Wolfe, naming October 26 as the effective date of cancellation. Wolfe declined to receive the letter, knowing that he was in arrears on premium payments and that Liberty was attempting to cancel the policy. The letter was returned to Liberty unclaimed. Had Wolfe received and read the notice, he would have been advised that, "[t]o prevent the revocation of your registration certificate and number plates, your overdue premiums MUST BE PAID at least FIVE DAYS prior to the effective date of cancellation to allow us sufficient time to reinstate your policy."[2]

The quoted language, Wolfe argues, was improper because it violated the provisions of § 113A(2), as amended by St. 1973, c. 405. The amendment took effect on September 11, 1973, three weeks before the notice of cancellation was mailed to Wolfe, and requires that notices of cancellation for nonpayment of premiums advise the insured that payment of the overdue premium on or before the effective date of cancellation stated in the notice will avoid cancellation of the policy. Liberty argues that, for reasons to be examined below, the amendment did not apply to the notice of cancellation it sent to Wolfe, and

[2] Other findings, which are not material to our decision, are that Liberty sent notice of the cancellation to the Registry of Motor Vehicles on October 26, 1973; its time of receipt is expressly not found, but it was date-stamped on November 6; after the November 15 accident, Wolfe sent Liberty a check which was dated November 21, for the entire balance then due; the payment was credited to Wolfe's account, but on December 28, 1973, Liberty sent Wolfe a check representing the excess which had been paid over the amount due on the date of cancellation of the policy; and on January 30, 1974, the Registry of Motor Vehicles mailed Wolfe a notice of the cancellation of his plates and registration.

that, even if the amendment was applicable, the defect was immaterial in view of the fact that Wolfe evaded receipt of the notice and thus could not have been misled by it.

The latter point cannot be sustained for two reasons. First, while it is established that one who wilfully avoids notice is charged with the "knowledge . . . which would flow from the notice had it been actually received," *Conte* v. *School Comm. of Methuen,* 4 Mass. App. Ct. 600, 605 (1976), we have found no authority for holding that such avoidance carries the further consequence of curing defects which would otherwise render the notice invalid. The contrary is implied in formulations relied on in the *Conte* case, such as those in *Commonwealth* v. *Olivo,* 369 Mass. 62 (1975), which discuss the consequences of a failure of the addressee to read "adequate notice" (at 71) or "notice which [is legally] sufficient" (at 69). Second, the sufficiency of a statutory notice of cancellation under § 113A(2) must be measured as of the time of mailing in the manner required by that section, because the mailing satisfies the statutory notice requirement, regardless of actual receipt by the addressee. *Paloeian* v. *Day,* 299 Mass. 586, 588 (1938). *Greenberg* v. *Flaherty,* 306 Mass. 95, 99 (1940). We thus turn to the question of the legal sufficiency of the notice, bearing in mind the general rule that, in the cancellation of insurance policies, conditions imposed by law with respect to the giving of notice must be strictly complied with if the cancellation is to be valid. *Gulesian* v. *Senibaldi,* 289 Mass. 384, 387 (1935). *Fields* v. *Parsons,* 353 Mass. 706, 707 (1968). *Strong* v. *Merchants Mut. Ins. Co.,* 2 Mass. App. Ct. 142, 148 (1974), modified in another respect, 366 Mass. 751 (1975), *S.C.* 5 Mass. App. Ct. 870 (1977).

The 1973 amendment had the force of law, as mentioned above, on September 11, 1973, ninety days after the bill was signed by the Governor. Article 48 of the Amendments to the Constitution of Massachusetts, The Referendum, I. If the amendatory language directly regu-

lated notices of cancellation, it would presumably have been applicable to any notice of cancellation mailed on or after September 11, in accordance with the usual presumption of prospective application. *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977). *Goodwin Bros. Leasing, Inc.* v. *Nousis*, 373 Mass. 169, 173 (1977). But the section which was amended, § 113A(2), does not, in form at least, directly regulate the procedure for cancellation and the content of notices of cancellation. Rather, it provides that "[n]o motor vehicle liability policy . . . shall be issued or delivered . . . unless it contains in substance the following provisions:———", and there follow several numbered paragraphs, including the provision numbered (2), which concern cancellation procedures. Thus, § 113A regulates the content of motor vehicle liability policies, and prohibits the issuance of a policy not containing the mandated provisions.

We assume that the Legislature could validly require additional terms to be included in cancellation notices to be issued under policies in force before the additional requirement should take effect, given the apparently attenuated impact of constitutional strictures on impairment of contractual obligations in the highly regulated area of motor vehicle liability insurance. See *American Manufacturers Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978), and cases cited. But the Legislature appears to have chosen not to control the content of cancellation notices directly, but rather indirectly, by making the detailed legal requirements of such notices a matter of contract between the insurer and the policyholder. If the Legislature had intended to alter the legal rights and obligations of the parties to policies then outstanding, we indulge the usual assumption (*Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 [1914]; *Ring* v. *Woburn*, 311 Mass. 679, 682 [1942]; *Austin* v. *Boston Univ. Hosp., supra*) that it would have done so expressly, as it did in the statute upheld in the *American Manufacturers Mut. Ins. Co.* case, *supra*. That assumption leads to

ease and uniformity of application, avoiding fine distinctions between those mandated policy provisions which may validly be altered as to outstanding policies and those which go so much to the core of the contractual relationship as to bring into question the constitutional validity of retroactive application; and, because such policies are normally issued on a calendar year basis, it does not delay unduly the date when the new policy provisions will be in force universally. For these reasons, we hold, in the absence of a contrary expression of intent by the Legislature, that an amendment to the content of motor vehicle liability policies mandated by § 113A will apply only to policies issued on and after the effective date of the amendment.

It follows that the notice of cancellation sent by Liberty to Wolfe was valid because it was in compliance with the policy provisions governing the content of such notices and because those provisions complied with the terms of § 113A(2) as they stood at the time of the policy's issuance.

Having reached that conclusion, we need not examine Liberty's further contention that the language of the amendment to § 113A(2), contrasted with the language employed in the other sentence of § 113A(2) (the latter stating in essence that "no cancellation" of a policy "shall be valid" unless certain conditions are met, and the former merely stating that a notice of cancellation "shall state" certain things), bespeaks a legislative intention that a failure by the insurer to include the statement required by the amendment in a notice of cancellation should not automatically result in the voiding of the notice. We have considered the other arguments made by Wolfe and they are without merit.

*Judgment affirmed.*