SPRINGFIELD CHRYSLER–
PLYMOUTH, INC., Plaintiff–
Respondent,

v.

Ted J. HARMON, Defendant–Appellant,

Opal K. Harmon, Defendant.

No. 18301.

Missouri Court of Appeals,
Southern District,
Division Two.

July 8, 1993.

Motion for Rehearing or Transfer
Denied July 29, 1993.

Loren R. Honecker, Sherwood, Honecker & Bender, J.R. Victor, Springfield, for defendant-appellant.

Craig R. Oliver, Daniel R. Wichmer, Miller & Sanford, Springfield, for plaintiff-respondent.

MONTGOMERY, Presiding Judge.

Springfield Chrysler–Plymouth, Inc. (Plaintiff) brought this action for a deficiency judgment after Defendants Ted and Opal Harmon[1] defaulted on a car loan. Ted cross-claimed against Opal for all sums adjudged against him in Plaintiff's favor, alleging she assumed the obligation to Plaintiff in a separation agreement incorporated in their dissolution of marriage decree. After a nonjury trial, Plaintiff was awarded a judgment for $7,647.98 against Ted and Opal. Ted prevailed against Opal on his cross-claim for the same amount. Only Ted appeals.

Ted's single point asserts the trial court misapplied the law in granting Plaintiff a judgment since no proper notice was given regarding disposition of the collateral. He argues the notice failed to comply with § 400.9–504(3)[2] because (a) it did not specify whether disposition of the collateral would be made by public or private sale and was otherwise ambiguous, (b) Plaintiff failed to provide him with reasonable notification of its intended disposition of the collateral, and (c) Plaintiff was not the secured party when the required notice was sent. According to Ted, Plaintiff's right to a deficiency judgment arises only after a proper notice of the disposition of the collateral is given.

■ Our review is under Rule 73.01(c). As that rule is interpreted, we are to sustain the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Stancil v. Fair,* 811 S.W.2d 503, 504 (Mo.App.1991). Fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached. Rule 73.01(a)(2).

The only evidence at trial was offered by Plaintiff, although Ted personally appeared. The evidence revealed that on August 9, 1989, Ted and Opal purchased a 1989 Plymouth from Plaintiff for $14,580. In connection with the sale, the purchasers executed a promissory note in the amount of $13,959.42, payable in monthly installments of $332.24, along with a security agreement granting Plaintiff a security interest in the vehicle.

Paragraph 6 of the security agreement provided, *inter alia,* as follows:

> Any requirements of reasonable notice by the secured party shall be met if such notice is mailed, postage prepaid, to the address of the debtor shown at the beginning of this agreement (or to such other address as the debtor may have requested in writing) ...

Ted and Opal listed their address on the security agreement as 3645 S. Newton, Springfield, Missouri.

Subsequently, the note and security agreement were assigned to Commerce Bank under the terms of a repurchase agreement. That agreement required Plaintiff to pay the bank the amount of the outstanding debt, plus certain expenses, in the event of an uncured default, effective twenty days after notice of default to purchasers.

Regular payments were made on the note until December 1990. Around January 1, 1991, Opal notified the bank that she and Ted were divorced and she was unable to pay for the Plymouth which was in her possession. Opal indicated she was residing in Alabama and that she would turn the vehicle in to a local bank. The vehicle was

---

1. For convenience, we refer to Defendants as Ted and Opal.

2. Statutory references are to RSMo Supp.1992 unless otherwise indicated. Rule references are to Missouri Rules of Court (1993).

subsequently repossessed by Commerce bank.

On January 18, 1991, the bank notified Ted and Opal by letter of their default, the repossession of the vehicle and their right to cure. One copy of the letter was sent to both parties in Alabama and another copy to them at 3645 S. Newton, Springfield, Missouri. Both letters were sent certified mail, return receipt requested. The letter sent to the Springfield address was returned to the bank as nondeliverable or as unclaimed. Two receipts were returned to the bank regarding the Alabama letter signed by "D. Adams."

On February 4, 1991, the vehicle was returned to Plaintiff pursuant to the repurchase agreement. The note and security agreement were later assigned back to Plaintiff.

On February 5, 1991, Plaintiff sent a letter by certified mail to Ted and Opal at their Springfield address. The letter stated, in pertinent part:

> You are hereby notified that [Plaintiff] has taken possession of the above described collateral due to default under the note or security agreement in the above transaction and hereby notifies you, pursuant, Section 400.9501 through 400.9507, R.S., Mo. that it intends to sell or dispose of said collateral unless you redeem same by paying the payoff balance and repossession costs. Disposition or sale will occur after (10) days from the date of this letter. You may redeem the collateral, as indicated, within twenty days from the date of possession. Possession date on this vehicle was 02–04–91.

This letter was returned unclaimed after it had been forwarded to an address in Grand Island, Nebraska.

Plaintiff paid the bank $12,610.72 on March 20, 1991, and received a repossession title to the vehicle. After soliciting bids on the vehicle, Plaintiff received three bids from car dealers ranging from $4,500 to $4,825. Plaintiff then purchased the vehicle for $5,100. Later, Plaintiff sold the vehicle to a retail customer for $7,010.

Certain legal principles apply generally to Ted's claim that Plaintiff's right to a deficiency judgment was contingent upon a proper notice to him regarding disposition of the collateral.

■ The purpose of the statutory notice is to apprise the debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. *Cherry Manor v. American Health Care*, 797 S.W.2d 817, 821 (Mo.App. 1990). "Since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficiency accrues only after strict compliance with the relevant statutes." *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 863 (Mo.App.1978); *Modern Auto Co., Inc. v. Bell*, 678 S.W.2d 443, 444 (Mo.App.1984). *Gateway* and subsequent cases have established the doctrine of "No Notice—No Deficiency" in this state. *Boatmen's Nat'l Bank v. Eidson*, 796 S.W.2d 920, 922 (Mo.App.1990).

■ Any doubt as to what constitutes strict compliance with the notice requirement is resolved in favor of the debtor. *Chrysler Capital Corp. v. Cotlar*, 762 S.W.2d 859, 861 (Mo.App.1989). The party seeking the deficiency judgment bears the burden of proving compliance with § 400.9–504(3), including the burden of proving the sufficiency of the notice. *Cherry Manor* at 821.

Orderly discussion of Ted's point requires that we first address ground (b) on whether Plaintiff gave "reasonable notification" of its intended disposition of the collateral.

■ Section 400.9–504(3) provides, in pertinent part, as follows:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

Section 400.1–201(26) provides, in pertinent part:

A person **"notifies"** or **"gives"** a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it.

The definition of "send" is contained in § 400.1–201(38) which states, in pertinent part:

**"Send"** in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances.

Here, the instrument (security agreement) provided in paragraph 6, by agreement of the parties, that any requirement of reasonable notice would be met by mailing the notice, postage prepaid, to Ted and Opal's listed Springfield address or any other address either of them requested in writing. Ted's argument fails to address the effect of paragraph 6 on his assertion, nor does he claim Plaintiff was requested to provide him notice at an address different from that listed on the security agreement.

As we understand Ted's argument, he asserts Plaintiff knew or should have known its letter of February 5, 1991, would not reach him because the bank's letter of January 18, 1991, to him was returned unclaimed, and the bank knew Ted and Opal were divorced. He fails to describe any steps Plaintiff should have taken to obtain his actual address. The record is devoid of any evidence that Plaintiff had knowledge of Ted's address, other than the one on the security agreement.

In *Lankheit v. Estate of Scherer,* 811 S.W.2d 853 (Mo.App.1991), this Court noted

the following statement by the authors of one treatise:

"Section 201(38) requires that the notice be properly addressed. However, the Code does not require that the debtor actually receive the notice. Section 1–201(26) makes this clear, and a comment states: 'When the essential fact is the other party's receipt of the notice, that is stated.' Neither 9–504(3) nor the definition of 'send' explicitly states that the notice must ultimately reach the debtor. We know of no case holding that the debtor must receive the notice, assuming it to have been properly sent. Indeed, if a creditor had to assure debtor's receipt of the notice, a debtor could hide to prevent disposition of collateral! Of course, creditors can, and usually should, use certified mail and the like so that proof of mailing exists."

Uniform Commercial Code (Third Ed.) White and Summers, § 27–12, p. 602. *Id.* at 858 n. 2.

Although we find no Missouri cases on this point, other jurisdictions have held the validity of a notice of sale of collateral does not depend upon actual receipt by the debtor. The notice requirement is met "if the steps taken were such as would be reasonably required to inform the person to be notified in the ordinary course." *State Bank of Litchfield v. Lucas,* 210 Neb. 400, 315 N.W.2d 238, 240 (1982). *See Stone v. Cloverleaf Lincoln–Mercury,* 546 So.2d 388, 390–91 (Ala.1989).[3]

We hold the steps taken by Plaintiff to notify Ted of the sale of collateral were those "reasonably required" under the circumstances, especially in view of the parties' agreement in paragraph 6 of the security agreement. *See Liberty Bank v. Honolulu Providoring Inc.,* 65 Haw. 273, 650 P.2d 576, 579–80 (1982) (holding UCC § 9–501(3)(b) allows the parties to determine by agreement the appropriate standards of notification and commercial reasonableness).

Having determined that Plaintiff took the necessary steps to reasonably notify

---

**3.** For additional cases on this subject, *see,* generally, 11 ALR4th 241—sufficiency of secured party's notification of sale or other intended dispo-

sition of collateral under UCC § 9–504(3). Sections 14–16 of that annotation deal with receipt or nonreceipt by debtor of the notice.

Ted of the sale, we find it unnecessary to decide ground (a) where Ted claims the contents of the notice failed to comply with § 400.9–504(3).

■ Implicit in Ted's argument is the fact that he received no notice. Therefore, an unreceived but properly sent notice, defective or not, could not be prejudicial to Ted's right to protect his interest in the sale of the collateral. Protection of that right is the purpose of the statutory notice. *Cherry Manor,* 797 S.W.2d at 821. Ted's failure to protect his interest in the collateral did not result from a defective or ambiguous notice.

■ Generally, noncompliance with rules or statutory procedures does not warrant reversal in the absence of prejudice. *State ex rel. Kugler v. Maryland Heights,* 817 S.W.2d 931, 932 (Mo.App.1991). This rule was applied by the Supreme Court in *Heintz v. Woodson,* 758 S.W.2d 452 (Mo. banc 1988). There, the Court upheld the trial court's refusal to quash an execution sale of real estate based upon a judgment creditor's failure to file proof of service with the Court within five days of serving notice of the sale (Rules 43.01(g) and 76.-17)). The Court said, "By denying this motion, the trial court simply recognized that in view of appellant's admission that he received notice of the sale, the requirement of filing proof of service with the court became a superfluous technicality and made the time of filing such proof utterly irrelevant. If this be error, it certainly does not materially affect the merits of the action." *Id.* at 454.

■ Here, the contents of the properly sent notice were irrelevant since Ted did not receive it. Under Rule 84.13(b) we cannot reverse any judgment unless we find the error below materially affected the merits of the action. We are unable to make such finding in this case.

■ Finally, ground (c) asserts that § 400.9–504(3) requires notice of the sale of collateral be sent "by the secured party" which Plaintiff was not.

In support of this proposition, Ted relies on *Topeka Datsun Motor Co. v. Stratton,*

12 Kan.App.2d 95, 736 P.2d 82 (1987), and *Modern Auto Co., Inc. v. Bell, supra.* Neither case factually supports him. In both cases a car dealer sold a vehicle on credit to defendants and assigned the note and security agreement to a bank. Upon default, only the banks sent notices of sale of the collateral to the debtors. In neither case did the car dealer, after reassignment of the paper, send notice of its intent to sell the collateral.

Unlike *Topeka Datsun* and *Modern Auto,* the Plaintiff in this case sent notice to Ted after Plaintiff obtained possession of the repossessed vehicle from the bank. At that time, Plaintiff was obligated by the repurchase agreement to pay off the balance owed the bank unless Ted or Opal cured the default. Neither did so.

Section 400.9–504(5) provides:

A person who is liable to a secured party under a ... repurchase agreement or the like and who receives a transfer of collateral from the secured party ... has thereafter the rights and duties of the secured party.

Under the terms of this section Plaintiff had the rights and duties of a secured party on February 4, 1991, when the bank transferred possession of the vehicle to Plaintiff based upon the terms of the repurchase agreement. The notice was sent to Ted on February 5, 1991, by Plaintiff as a secured party.

Ted argues Plaintiff did not become the secured party until it obtained the vehicle's title from the bank after February 5, 1991. He cites no cases to support that view and we find none. We hold Plaintiff was the secured party when the notice was sent by virtue of § 400.9–504(5).

Judgment affirmed.

PREWITT, J., concurs.

FLANIGAN, J., concurs in part and dissents in part in separate opinion filed.

FLANIGAN, Judge, concurring in part and dissenting in part.

I concur with most of the principal opinion. I dissent only with respect to that

portion of it which states, "the contents of the properly sent notice were irrelevant since Ted did not receive it." It is my view that the nonreceipt of the notice by Ted does not eliminate the need to examine the sufficiency of the notice.

Section 400.9–504(3) reads, in pertinent part:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

The party seeking the deficiency judgment has the burden of proving the sufficiency of the notice. *Cherry Manor v. American Health Care,* 797 S.W.2d 817, 821 (Mo.App.1990). That burden is not satisfied by the mere showing that Ted did not receive the notice. Even if Ted had refused to receive the notice, it would still be necessary for plaintiff to prove its sufficiency.

"A person who refuses a notice is simply deemed to have knowledge of its contents. The legal sufficiency of the contents still must be determined." 58 Am.Jur.2d Notice § 33. Authorities consistent with the foregoing principle include: *Rodell v. Nelson,* 113 Idaho 945, 750 P.2d 966 (App. 1988); *Liberty Mut. Ins. Co. v. Wolfe,* 7 Mass.App. 263, 386 N.E.2d 1303 (1979).

In *Rodell,* the defendant refused to accept service of an order. The trial court did not address the issue of the sufficiency of the order and reasoned that any defect in it was immaterial. On appeal, the court said, 750 P.2d at 968:

This reasoning may have some intuitive appeal, but it contains a *non sequitur.* Although a written notice can not be evaded, it does not follow that such evasion cures or renders immaterial any defect in the document itself. A person who refuses a notice is simply deemed to have knowledge of its contents. The legal sufficiency of those contents still must be determined.

In *Wolfe,* the court said, 386 N.E.2d at 1304:

[W]hile it is established that one who wilfully avoids notice is charged with the knowledge ... which would flow from the notice had it been actually received, we have found no authority for holding that such avoidance carries the further consequence of curing defects which would otherwise render the notice invalid. (Authorities omitted.)

Closer in point is *Tauber v. Johnson,* 8 Ill.App.3d 789, 291 N.E.2d 180 (1972), because it is based on § 9–504 of the Uniform Commercial Code which is also the source of § 400.9–504. In *Tauber,* the court pointed out that notification under the statute has been found to be reasonable when merely sent by certified letter to the debtor's last known place of business and that there is no requirement that plaintiff prove actual receipt of the letter by defendant.

In *Tauber,* the court said, 291 N.E.2d at 183:

[P]laintiff proved only that an envelope had been sent, by introducing into evidence the certified mail return receipt. He utterly failed to present any evidence as to the contents of the envelope, and there was nothing to show that it contained the proper statutory notice of intent to resell the car. No copy of the notice allegedly sent to defendant was sought to be introduced, and plaintiff testified that he could not recall the contents of the letter. In the absence of any showing of the contents and substance of the letter, we must conclude that plaintiff has failed to sustain his burden of proving compliance with the requirements for notice of disposition.

The principal opinion sets forth the contents of the letter of February 5, 1991. That notice would not satisfy the requirement under § 400.9–504 with respect to a public sale because it does not state "the time and place of any public sale."

In the case of a private sale or other disposition, the creditor must give the debtor reasonable advance notice of a specified time after which such private

sale or other disposition is to be made. The notice of a private sale need only state that after a certain date the property will be sold and is not required to give a date on which the sale will be made, and there is no requirement of notice of the time and place of the sale.

9 Anderson, Uniform Commercial Code, § 9–504:49 (3d ed. 1985).

The Code does not state whether the notice must specify whether the sale is a private or a public sale. The majority of courts hold that the notice must state the kind of sale that is to be held. A minority follow the Code as written and only require that the notice set forth the information specifically required by the Code for the particular kind of sale that is involved, and hold that it is not required to specify what kind of sale it is. From the standpoint of administration, the majority view that amends the Code by finding a requirement of specifying the kind of sale appears the preferable view. As the sufficiency of a notice depends upon the nature of the sale, it is preferable to have the nature of the sale specified first so that the sufficiency of the notice can then be determined on that basis, rather than work backwards and deduce the nature of the sale from the kind of notice given. In addition, the recipient of the notice will often be a person not trained in the law of the Uniform Commercial Code and it appears desirable to inform him of the nature of the sale, since no great burden is placed upon the creditor by requiring him to do so.

Id. at § 9–504:51.

Because the principal opinion does not rule on the sufficiency of the notice, I refrain from expressing a view thereon.