**FOOD SERVICES CORPORATION, Plaintiff–Respondent,**

v.

**Jeremy Francis RHEAM, Defendant–Appellant.**

No. 26205.

Missouri Court of Appeals, Southern District, Division One.

Oct. 5, 2004.

Verna L. Haun, Douglas, Haun, Kirksey & Heidemann, P.C., Bolivar, MO, for Appellant.

Dennis D. Reaves, Stockton, MO, for Respondent.

JAMES K. PREWITT, Judge.

Food Services Corporation ("Food Services") brought an action against Jeremy Francis Rheam ("Jeremy") asking the trial court to quiet title to the property at issue, declare that Food Services owns an undivided one-half interest in the property, and allow Food Services to partition said property and receive one-half of the net pro-

ceeds of a sale of the property. The trial court granted summary judgment in favor of Food Services.[1]

Jeremy appeals the trial court's decision and raises three points of alleged trial court error. According to Jeremy, the trial court erred in finding that: 1.) Food Services' registration of a foreign judgment was sufficient to entitle it to obtain an undivided interest in the property at issue because Food Services failed to meet the requirements of Rule 74.14; 2.) Jeremy is not entitled to set aside the sheriff's deed because Food Services failed to meet the notice requirements outlined in Rule 76.17; and 3.) Food Services acquired an undivided one-half interest in the property because the judgment debtor (Maurice Rheam) had been added to the title of the property strictly for estate planning purposes, and he did not contribute to the acquisition of the property.

We review the grant of summary judgment *de novo. Murphy v. Jackson Nat. Life Ins. Co.*, 83 S.W.3d 663, 665 (Mo.App. 2002). On appeal, we view the record in the light most favorable to the party against whom judgment was entered and afford the non-movant the benefit of all reasonable inferences from that record. *Winn ex rel. Winn v. Pollard*, 62 S.W.3d 611, 614 (Mo.App.2001). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *State ex rel. Missouri Highway and Transp. Com'n v. Overall*, 53 S.W.3d 222, 225 (Mo.App.2001).

If there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Daniels v. Senior*

---

1. Within this opinion, various members of the Rheam family will be referred to by their first names. This is strictly for simplicity's sake. We mean no disrespect.

*Care, Inc.*, 21 S.W.3d 133, 135 (Mo.App. 2000). The key to summary judgment, however, is the undisputed right to judgment as a matter a law, not simply the absence of a question of fact. *Murphy*, 83 S.W.3d at 665.

### Facts

On August 14, 1985, Eula Leota Rheam, following the death of her husband Arnold Rheam, executed a warranty deed conveying the property at issue in Cedar County, Missouri, to herself and her son, Maurice Edward Rheam, as joint tenants with rights of survivorship. The warranty deed was recorded in Cedar County, Missouri, on August 15, 1985. The deed listed Route 2, El Dorado Springs, Missouri, 64744, as the address of the "first named grantee," which was Eula.

The warranty deed did not specify the respective ownership interest of each joint tenant. Maurice did not contribute anything toward or provide consideration for the acquisition of the property, and he was added as a joint tenant for estate planning purposes. During the time Maurice's name remained on the deed, Eula paid all taxes, insurance, and maintenance related to the property.

On September 20, 2000, Food Services obtained a judgment in Colorado against Maurice in the amount of $94,135. On November 6, 2000, Food Services filed a transcript of judgment with the Circuit Court of Cedar County, Missouri. On January 17, 2001, Food Services filed a petition for registration of foreign judgment in the Circuit Court of Cedar County, Missouri, as well as the transcript of judgment referenced above, and certifications provided by the clerk of the District Court of Adams County, Colorado, and the chief judge of that same court.

On March 30, 2001, Eula and Maurice executed a warranty deed in Cedar County, Missouri, conveying the property to Eula and Jeremey (Eula's grandson), as joint tenants with rights of survivorship. The deed was silent as to the respective ownership of the joint tenants. P.O. Box 72, El Dorado, Missouri, 64744 was listed on the deed and designated as "Grantee's mailing address."

On July 26, 2001, a writ of execution was issued on an undivided one-half interest of the property. On July 30, 2001, the Cedar County, Missouri, sheriff filed a notice of levy on Maurice's right, title, and interest in the property, specifically an undivided one-half interest in the property, in the Cedar County, Missouri, office of the recorder of deeds. On that same day, the sheriff mailed a notice of exemptions to Maurice and Jeremy, each at the P.O. Box 72, El Dorado, Missouri, address. The notice of exemptions was also sent to Eula at a Ponca City, Oklahoma, address.

Eula passed away on September 25, 2001. On October 4, 2001, Food Services sent Maurice and Jeremy each a notice pursuant to Rule 76.17 accompanied by a copy of the notice of sheriff's sale of an undivided one-half interest of the property. The certificate of services signed by counsel for Food Services was attached and filed with the Circuit Court of Cedar County, Missouri. The address used for Maurice and Jeremy to mail the notice via first-class mail was the same, and was the El Dorado, Missouri address. Notice of the impending sheriff's sale was published in the *El Dorado Springs Sun* newspaper. The sheriff's sale took place on November 9, 2001, and Food Services purchased an undivided one-half interest in the property for $8,000 and was issued a sheriff's deed for the same.

On December 6, 2001, Food Services filed suit against Jeremy in the Circuit Court of Cedar County, Missouri, asking

the court to quiet title to the property at issue and declare that Food Services and Jeremy each owns an undivided one-half interest in the property. Food Services also requested that the land be partitioned and sold, with Food Services and Jeremy each receiving one-half of the net proceeds based on their respective rights and interests.

Food Services and Jeremy filed cross motions for summary judgment, arguments for which were heard on December 16, 2002. On January 13, 2003, the trial court filed an order of partial summary judgment finding that Food Services' registration of foreign judgment was sufficient to entitle it to obtain an undivided interest in the property; whether the undivided interest was an undivided one-half interest was subject to additional proof; Food Services was entitled to partition and receive a portion of the net proceeds of the partition sale according to its rights and interests in the property; and Jeremy was not entitled to set aside the sheriff's deed, but may be entitled to a reformation of the deed based on the determination of the extent of Food Services' interest in the property.

On November 21, 2003, Jeremy filed a first amended counterclaim asking that the execution sale and sheriff's deed be set aside as void, based on Food Services' alleged failures to file an authenticated judgment under Rule 74.14 and to provide adequate notice required under Rule 76.17. Alternatively, if the trial court determined that the sale and deed were valid, Jeremy asked the court to consider the contribution of the parties with respect to the property in its determination of the respective interests in the property.

Food Services and Jeremy filed second motions for summary judgment, arguments for which were held on February 23, 2004. On March 1, 2004, the trial court filed an order granting final summary judgment, sustaining Food Services' motions for summary judgment and denying Jeremy's. The trial court reiterated its findings stated in the previous order that Food Services' registration of foreign judgment was sufficient for it to proceed to obtain an undivided interest in the property, and that Jeremy was not entitled to set aside the sheriff's deed. In addition, the trial court specified that Food Services had an undivided one-half interest in the property and that it was entitled to partition and receive one-half of the net proceeds following a partition sale.

Jeremy appeals from the trial court's order granting final summary judgment.

## Discussion

As noted above, Jeremy raises three points of alleged trial court error. We will address them in order.

*Point I—Registration of foreign judgment sufficient*

In his first point, Jeremy contends that the trial court erred in finding that Food Services' registration of foreign judgment, the Colorado judgment for $94,135 against Maurice, was sufficient to entitle Food Services to obtain an undivided interest in the property. Jeremy alleges that the requirements of Rule 74.14 were not met, specifically that no copy of the actual Colorado judgment was filed with the Circuit Court of Cedar County, Missouri.

Under Rule 74.14, "[a] copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any circuit court of this state." Rule 74.14(b). The rule is to be "interpreted and construed as to effectuate its general purpose to make uniform the law of those states that adopt the 'Uniform

Enforcement or Foreign Judgments Law.'" Rule 74.14(f).

 Registration of foreign judgment occurs under Uniform Enforcement of Foreign Judgments Law when an authenticated copy of foreign judgment is filed in circuit clerk's office; the filing of a petition for registration or entry of order of registration is not required. *Lewis v. Roskin*, 895 S.W.2d 190, 199 (Mo.App.1995). The purpose of the Uniform Enforcement of Foreign Judgments Law is to provide judgment creditors a means by which they can enforce judgments from other forums that are entitled to full faith and credit under the U.S. Constitution. *Delhagen v. Miracle Recreation Equip. Co., Inc.*, 891 S.W.2d 192, 193 (Mo.App.1995). Missouri courts accept foreign judgments in the form they were rendered. *Id.*

 In order to be given full faith and credit in a Missouri court, a foreign judgment must be authenticated. *McMinn v. McMinn*, 884 S.W.2d 277, 279 (Mo.App.1994). As such, it must bear the attestation and seal of the clerk of the court as well as the certification of a judge. *Id.* The authentication requirement is not only important, but the certification by a sister-state judge is considered essential to ensure the Missouri court that the prior judgment is valid. *Id.* at 280.

We also consider two other statutory sections. First, pursuant to § 490.130, RSMo 2000,

The records of judicial proceedings of any court of the United States, or of any state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding associate circuit judge of the court to be attested in due form, shall have such faith and credit given to them in this state as they would have at the place whence the said records come.

Second, § 511.440, RSMo 2000, provides:

Judgments and decrees obtained in the supreme court or any district of the court of appeals or any United States court or any court of record in this state shall, upon the filing of a transcript thereof in the office of the clerk of the circuit court of any other county and indexing of such transcript as provided in subsection 2 of this section, be a lien upon the real estate of the person against whom such judgment or decree is rendered, situate in the county in which such transcript is filed.

In *State v. Monroe*, 18 S.W.3d 455 (Mo. App.2000), which was analyzed in pertinent part under § 490.130, RSMo 2000, the prosecutor offered as evidence a transcript of judgment of a DWI conviction from an Arkansas municipal court. *Id.* at 457. The transcript of judgment (Exhibit 2) was "authenticated" by the court clerk from the Arkansas court. *Id.* Following objection to that document, the prosecutor offered a second document (Exhibit 1) that contained a clerk's "authentication" of "the writings annexed" and, beneath that, the signature of a municipal judge "certify[ing] the foregoing authentication by [the clerk] to be in due form." *Id.*

The State conceded that Exhibit 2 did not contain the municipal judge's certification as required under § 490.130. *Id.* at 459. On appeal, it was determined that the separate certification in Exhibit 1 did not meet the requirements of § 490.130 or serve the purpose of assuring the Missouri court that the attestation of the clerk from the foreign state was in "due form." *Id.* Reading the exhibits, documents which had not been filed with the court on the same day, together did not help because the attestations were not identical. *Id.* at 457 and 459. Therefore, the appellate

court found that the trial court erred in admitting the exhibits. *Id.* at 459.

In *Ritterbusch v. New London Oil Co., Inc.,* 927 S.W.2d 873 (Mo.App.1996), consideration was given to the registration of a Pennsylvania judgment in a Missouri court. *Id.* at 874. On appeal, it was argued that the judgment filed did not constitute a foreign judgment under Rule 74.14. *Id.* The respondent in the case had filed authenticated copies of a prothonotary's record and proceedings and the filings contained a certification from the prothonotary that the records were true and correct copies, and also a certification from the judge in the case that the prothonotary was "duly commissioned and qualified" and that her acts should be given full faith and credit. *Id.* The appellate court determined that the documents provided sufficient proof of the judgment in Pennsylvania. *Id.* at 875.

■ Jeremy draws our attention to *Griggs v. Gibson,* 754 P.2d 783 (Colo.App. 1988). Within that case, an attorney for the judgment creditor filed with the Colorado court an affidavit of foreign judgment, which purported to describe the California judgment. *Id.* at 784. The Colorado court found that the trial court erred because "a document that merely describes the foreign judgment cannot be filed in lieu of an authenticated copy of the judgment itself." *Id.* at 785. The case does not discuss whether any other authentication or certification was filed, but the appellate court did use a Wyoming case within its analysis in which a certificate of judgment issued by a court clerk that described the judgment, which was suitable for recording of a judgment lien, could not be substituted for an authenticated copy of the judgment. *Id.; see also Hull v. Buffalo Fed. Sav. & Loan Ass'n,* 661 P.2d 1049, 1051–52 (Wyo.1983).

Foods Services agrees with Jeremy's recitation of facts that on November 6, 2000, Food Services filed a transcript of judgment with the Circuit Court of Cedar County, Missouri. In addition, all parties agree that on January 17, 2001, Food Services filed a petition for registration of foreign judgment and that attached to the petition as an exhibit were the transcript of judgment as well as a separate page of certifications from the clerk of the Adams County, Colorado District Court and the chief judge of that same court. To aid our analysis, we outline those documents below. The first is the transcript of judgment.

DISTRICT COURT, ADAMS COUNTY, COLORADO
CASE NO. 00CV-001401 DIVISION A
TRANSCRIPT OF JUDGMENT

| | |
|---|---|
| FOOD SERV INC | RHEAM, MAURICE |
| Plaintiff | Defendant |
| Judgment Amount: $94,135.00 | Judgment Date: September 20, 2000 |
| Additional Remarks: | |
| Debtor(s): | Maurice Rheam |
| Creditor(s): | Food Serv Inc |
| Balance of Judgment to Date: | $94,135.00 |

I hereby certify that the above is a true and complete transcript of the judgment in the above-referenced case which is retained in my office.

(Imprinted Seal) Eloise Cohen
Clerk of Court
DISTRICT COURT, ADAMS COUNTY

(signature of deputy clerk)
DATE: October 10, 2000 Deputy Clerk Deputy Clerk

The next page contains the following information. "Transcript of Judgment" and the dates were typed into the form, or at least appear in a different font.

DISTRICT COURT, ADAMS COUNTY, COLORADO

I, Eloise Cohen, Clerk of the Adams County District Court, 17th Judicial District, State of Colorado, do hereby certify that the foregoing is a true copy of Transcript of Judgment

Given under my hand and seal at my office in Brighton, Colorado, on January 09, 2001.

(Ms. Cohen's signature) (Imprint of Seal)

ELOISE COHEN, Clerk

DISTRICT COURT, ADAMS COUNTY, COLORADO

I, Harlan R. Bockman, Chief Judge of the Adams County District Court, 17th Judicial District, State of Colorado, do hereby certify that Eloise Cohen, whose name is subscribed to the foregoing Certificate, is the Clerk of the Adams County District Court. Full faith and credit are to be given to all of her official acts as such in all Courts or Record ad elsewhere; and that her attestation is in due form and by the proper officer.

BY THE COURT on January 09, 2001.

(Judge Bockman's signature)

HARLAN R. BOKMAN, Chief Judge

DISTRICT COURT, ADAMS COUNTY, COLORADO

I, Eloise Cohen, Clerk of the Adams County District Court, 17th Judicial District, State of Colorado, do hereby certify that Harlan R. Bockman, whose signature is appended to the foregoing certificate, is the Chief Judge of the Adams County District Court. Full faith and credit are to be given to all of his official acts as such in all Courts of Record and elsewhere.

Given under my hand and seat at my office in Brighton, Colorado, on January 09, 2001.

(Ms. Cohen's signature) (Imprint of Seal)

ELOISE COHEN, Clerk

In our view, the documents do not suffer from the same deficiencies as noted in the cases discussed above, and the trial court did not err in finding that Food Services' registration of foreign judgment was sufficient to entitle it to proceed. Point I is denied.

*Point II—Notice requirements under Rule 76.17*

In his second point, Jeremy argues that the trial court erred in finding that he is not entitled to set aside the sheriff's deed. Specifically, Jeremy contends that Food Services did not meet the notice requirements under Rule 76.17. Rule 76.17 is titled "Notice to Person Whose Land is Levied Upon." It provides that "[a]t least thirty days before the sale of land the judgment creditor shall serve a notice of sale on the person whose land is levied upon by personal service or by mailing a copy thereof to the person's last know address." Rule 76.17. Further, the rule provides that "[s]ervice may be shown by acknowledgment of receipt, written return of service, or by affidavit or written certification of counsel making such mailing. Proof of service shall be filed in the court." Rule 76.17.

Generally stated, the purpose of statutory notice is to apprise a judgment debtor of the sale so that the debtor may take whatever action he or she deems is necessary to protect his or her interests. *Springfield Chrysler–Plymouth, Inc. v.*

*Harmon,* 858 S.W.2d 240, 242 (Mo.App. 1993). Although it is often stated as notice by the judgment creditor to a judgment debtor, it is accepted that the notice requirement under Rule 76.17 is extended not only to judgment debtors, but also to all landowners affected by the sheriff's sale so that no landowner's property will be sold out from under him or her without adequate notice to allow the landowner to take action to protect his or her interests. *See Grate v. Richards,* 689 S.W.2d 635, 638 (Mo.App.1984).

██ If the judgment creditor takes steps that are "reasonably required" by the rule and under the circumstances of the case to inform the person who is to be notified, the statutory notice requirement is met. *Springfield Chrysler–Plymouth,* 858 S.W.2d at 243. Procedural rules, such as a notice requirement, are the means by which to ensure fair and orderly resolution of disputes and attain just results; they are not the ends. *Metmor Fin., Inc. v. Landoll Corp.,* 976 S.W.2d 454, 460 (Mo. App.1998). Therefore, noncompliance with rules or statutory procedures does not generally warrant reversal unless prejudice is shown. *Id.* For an execution sale to be set aside, any noncompliance must undermine the purpose of the rule and the complaining party must be prejudiced by the noncompliance. *Id.*

In *Metmor Fin., Inc.,* since the complaining parties received actual notice of the sale before it occurred, the purpose of the rule was met and they were not prejudiced. *Id.* at 460–61. Due to the absence of prejudice, it was unnecessary to determine in that case whether the alleged noncompliance occurred. *Id.* at 460.

In *Springfield Chrysler–Plymouth,* notice was sent to a debtor at the Missouri address shown in a security agreement. 858 S.W.2d at 241–42. That letter was returned unclaimed after having been for-

warded to a Nebraska address. *Id.* at 242. It was determined that the purpose of the rule had been met because the judgment creditor took the steps reasonably required under the rule to inform the person of the sale. *Id.* at 243–44.

In *McDonald v. McDonald,* 766 S.W.2d 715 (Mo.App.1989), an execution sale of an automobile was set aside for failure to provide notice to the sister of the judgment debtor who had joint interest in the vehicle. *Id.* at 718–19. Within the case there was discussion that, because of the lack of notice, the sister was not given an opportunity to establish the extent of her interest in the automobile. *Id.* at 719. However, the facts of the case showed that no notice was mailed to either the sister or her brother (the judgment debtor) at the address listed on the title. *Id.* at 716–17. There was publication of the notice in a newspaper, but the court noted that the wording of it would have reasonably led the sister to believe, if she had seen it, that only her brother's interest in the car was being sold, not the vehicle itself. *Id.* at 718.

██ In the case before us, notice was mailed to Jeremy at the El Dorado, Missouri address that was listed on the Warranty Deed. It was the only address listed on the deed by which the property was transferred from Eula and Maurice to Eula and Jeremy. As Jeremy notes, the address was listed as the "Grantee's address" with no specification as to which Grantee it referred. According to Food Services, it was aware that Eula had a Ponca, Oklahoma address (although it is not clear in the record how); therefore, it assumed that the "Grantee's address" was Jeremy's address. According to Jeremy, he has never resided at that address, or even in Missouri, and is a Maryland resident.

Under the circumstances of the case, we find that Food Services took steps that were reasonably required to meet the purposes of Rule 76.17. The trial court did not err in finding that Jeremy was not entitled set aside the sheriff's deed based on noncompliance with Rule 76.17. Point II is denied.

*Point III—Food Services entitlement to an undivided one-half interest*

In his final point, Jeremy contends that the trial court erred in finding that Food Services acquired an undivided one-half interest in the property. According to Jeremy, when a landowner adds a co-tenant to the title of real estate as an estate planning technique, there is no presumption of a donative intent.

The language referenced in Jeremy's point relied on is taken from cases such as *Christen v. Christen*, 38 S.W.3d 488 (Mo.App.2001) that deal with partition sales and § 528.030, RSMo 2000, under which the proceeds of such a sale must be divided among co-tenants "according to their respective rights and interests." *Id.* at 492; § 528.030, RSMo 2000. The presumption under that statute is that, if the deed does not specify the respective shares of the co-tenants, that all have equal undivided interests in the property. *Christen,* 38 S.W.3d at 492. This presumption, however, may be rebutted with proof that the co-tenants contributed unequally to the purchase of the property and there is neither a family relationship nor evidence of a donative intent by those who contributed more. *Id.*

Partition is the appropriate remedy when parties who hold real estate as joint tenants want to divide the property. *Lemay v. Hardin,* 48 S.W.3d 59, 62 (Mo.App.2001) *overruled on other grounds by Clark v. Dady,* 131 S.W.3d 382 (Mo. App.2004). The partition, which destroys the joint tenancy, may take place at the request of one or more of the joint tenants. *Heintz v. Hudkins,* 824 S.W.2d 139, 142 (Mo.App.1992). Determining the respective interests may involve other factors when discussing whether a judgment may be applied against property owned by a debtor who has interest in the property as a joint tenant. We find cases that discuss the issue as it relates to personal property instructive.

In *Nieman v. First Nat. Bank of Joplin,* 420 S.W.2d 20 (Mo.App.1967), wife obtained a judgment against her former husband and sought to collect the sum, in part, through funds in a joint account husband held as a joint tenant with his mother and other family members. *Id.* at 20–21. On appeal the court found that the following rule applied to the case: a creditor of one joint depositor who had no financial investment in the joint account may not invade that account to collect the judgment. *Id.* at 23.

In *Greenwood v. Bank of Illmo,* 782 S.W.2d 783 (Mo.App.1989), a judgment debtor and her two children held a certificate of deposit (CD) at a bank as joint tenants with rights of survivorship. *Id.* at 784. The bank, on the maturity date of the CD, wanted to set off the debtor's delinquent note with the bank with proceeds from the CD. *Id.* The two children were the only contributors to the CD. *Id.* On appeal, the court noted that under the analysis in *Nieman,* no judgment creditor of the judgment debtor could have garnished the CD to which the debtor made no contribution. 782 S.W.2d at 787. Following that analysis, it was determined that the bank had no authority to set off any of its delinquent notes of the judgment debtor against the CD. *Id.* at 788.

This analysis was also used in *Watlow Electric Mfg. Co. v. Wrob,* 881 S.W.2d 650 (Mo.App.1994). John Wrob appealed the

decision of the trial court which held that an account John held as a joint tenant with his brother could be attached through a garnishment by Watlow on his brother Mike. *Id.* at 650–51. The case was remanded to the trial court for a determination of who contributed to the account and, therefore, whether the money was John's or Mike's. *Id.* at 652–53. The appellate court noted that if the determination was that the money was John's, the garnishment of the account should be quashed. *Id.* at 653.

We find that the analyses of the cases presented above would apply to a situation in which a judgment creditor wishes to attach the interest of real property owned by a judgment debtor as a joint tenant with rights of survivorship. Jeremy's Point III has merit.

Food Services' contention in its second motion for summary judgment was that, as matter of law, Eula and Maurice each owned an undivided one-half interest and that Food Services therefore was entitled to one-half of the net proceeds of a partition sale. Based upon the above analysis, Food Services' contention is incorrect, and the grant of the motion for summary judgment in its favor must be reversed.

We note that Food Services, as part of its argument in Point III, references two statutes, § 369.150 and § 362.470, commenting in its brief, "[h]owever, when dealing with joint bank accounts there is a unique relationship that does not conform to the common notions of joint tenancy and therefore joint bank accounts are governed by Missouri statues § 369.150 and § 362.470 and not the traditional common-law rules applied to joint tenancy in general. *Carroll v. Hahn,* 498 S.W.2d 602, 606 (Mo.App.1973)." Section 369.150 has been repealed since *Carroll* and incorporated within § 369.174, RSMo 2000, which is titled "Joint tenants' accounts, how han-

dled." Section 362.470, RSMo 2000, is titled "Joint deposits." Other than the sentence from its brief outlined above, Food Services does not indicate why these statutes support its argument in Point III. Our reading of the statutes is that they do not call for a different result in this case.

## Conclusion

The trial court's order granting summary judgment in favor of Food Services is reversed and the cause remanded for further proceedings not inconsistent with this opinion. If the trial court determines that Maurice made no contributions to the acquisition of the property at issue, the sheriff's sale and deed were ineffective to convey any interest in the property, Food Services is not entitled to a partition sale or proceeds from such a sale, and title should be quieted solely in Jeremy.

GARRISON, P.J., and RAHMEYER, J., concur.