**DEER RUN PROPERTIES, L.L.C., Respondent,**

v.

**KEYS TO the LAKE LODGING, CO., L.L.C., Appellant.**

**No. SD 29950.**

Missouri Court of Appeals, Southern District, Division Two.

May 18, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 2010.

Application for Transfer Denied Aug. 31, 2010.

---

Ryan C. Bridges, Curran & Sickal, Columbia, for Appellant.

Larry R. Marshall, Columbia, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Appellant, a real estate brokerage, challenges a summary judgment denying its claim against Respondent (Seller) for a real estate commission and ordering removal of a lien notice against Seller's property. Appellant argues that summary judgment was inappropriate because genuine issues of material fact exist on both elements of its commission claim, and by extension, its statutory lien rights.[1]

1. *See* RSMo § 429.609 (2000).

### General Legal Principles

Missouri law regarding Seller's liability on Appellant's claim for a commission "is well established." *Kohn v. Cohn,* 567 S.W.2d 441, 446 (Mo.App.1978). Appellant has to prove that it was the efficient or procuring cause of a sale and that an employment relationship existed between itself and Seller. *Id.*[2] Summary judgment was proper if Seller effectively negated *either* element. *See ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 381–82 (Mo. banc 1993). Our review is *de novo. Id.* at 376.

### Facts and Background

In September 2005, Seller listed condominiums for sale with another broker (Broker). The listing agreement, subject to Appellant's right to sell, gave Broker a 12–month exclusive agency at a 10% commission. Broker placed the property on the local multi-list service (MLS).[3]

The following spring, prospective buyers (Buyers) contacted Seller and agreed to buy several units. About the same time, Appellant recorded a broker's lien notice against those units and mailed Seller a copy. Seller sued to remove the lien notice.[4] By counterclaim, Appellant alleged that it introduced Buyers to the property and was the procuring cause of any sale, entitling Appellant to a commission, a broker's lien, and to file its lien notice.[5]

Seller eventually sought summary judgment. It argued that the record conclusively proved Appellant was not the procuring cause of the sale and had no contract with Seller, with either circumstance being fatal to Appellant's claims.

Appellant responded by asserting that (1) the procuring cause issue was in genuine dispute, and (2) Appellant did not need its own contract with Seller. Rather, Appellant sought to rely on Broker's listing agreement, which allowed Broker to use subagents and pay them a commission.[6]

2. "In the absence of a contract of employment between the broker and the owner, the owner is not obligated to pay a commission even if the broker was the efficient cause of a sale." *Kohn,* 567 S.W.2d at 446, *quoted in Ham v. Morris,* 711 S.W.2d 187, 190 (Mo. banc 1986). This is the general rule. *See Cause of Action by Real–Estate Broker to Recover Commission* § 2, 27 CAUSES OF ACTION 2D 703 (Supp.2009)(employment agreement essential to claim for commission; owner owes no commission absent contract with broker, even if broker was efficient cause of sale).

3. Appellant asserts, without dispute by Seller, that the Bagnell Dam Association of Realtors MLS by-laws state, in part:

A Multiple Listing Service is a means by which authorized Participants make blanket unilateral offers of compensation to other Participants (acting as subagents, buyer agents, or in other agency or nonagency capacities defined by law); ... and is a facility for the orderly correlation and dissemination of listing information among the Participants so that they may better serve

their clients and the public. Entitlement to compensation is determined by the cooperating broker's performance as procuring cause of the sale (or lease).

4. Seller also sued for slander of title, but later dismissed that claim without prejudice.

5. The record indicates that the sale closed during the lawsuit with no commission being sought by or paid to Broker.

6. The listing agreement form includes these provisions:

**BROKER COOPERATION AND COMPENSATION POLICY.**

Broker's company policy authorizes Broker or Broker's representatives to cooperate with other brokers acting pursuant to the following brokerage relationships, as defined by Section 339.710 R.S.Mo. (*Inserting compensation amounts, percentages or "zero" below indicates such cooperation is authorized by Broker's company policy* ).

If Broker's company policy authorizes any such cooperation, then the amount of com-

Appellant claimed it was such a subagent, and as such, "would also be a party" to the listing agreement.

The trial court granted Seller summary judgment on Appellant's counterclaim and to remove the lien notice, but did not state the legal basis for its ruling. Since our review is *de novo*, we will affirm the judgment on any theory supported by the record. *In re Estate of Blodgett*, 95 S.W.3d 79, 81 (Mo. banc 2003).

Appellant raises several points on appeal. We find the contract issue dispositive.

**Appellant's Contract Arguments**

■ "In the absence of a contract of employment between the broker and the owner, the owner is not obligated to pay a commission even if the broker was the efficient cause of a sale." *Ham*, 711 S.W.2d at 190; *Kohn*, 567 S.W.2d at 446. Nonetheless, Appellant claims summary judgment was improper because Seller "failed to establish that Appellant was not a sub-agent" of Broker in that:

1. Under the listing agreement and MLS bylaws, Broker was authorized "to cooperate with other brokers" and pay "5% of Broker's Compensation to subagents of Broker," with "[e]ntitlement to compensation ... determined by the cooperating broker's performance as procuring cause of the sale."

2. By multi-listing the property, Broker made a unilateral offer of subagency to all other MLS brokers, which Appellant claims that it accepted by showing the property and being the procuring cause of the sale.

"As a result," urges Appellant, "there remains a genuine issue of material fact as to whether Appellant was acting as a subagent" of Broker "and thereby entitled to compensation."

Appellant's arguments cite no case law. We find no Missouri decision on point, but other courts have rejected such arguments, including three cases from New York. In *RWSP Realty, LLC v. Agusta*, 42 A.D.3d 490, 840 N.Y.S.2d 608 (2007), a "buyer's agent" found a purchaser for the defendants' home, then sued the defendants for a commission based on the listing agreement between the defendants and their own broker. The buyer's agent "had no cause of action against the defendants because it had no contract, express or implied, with them." *Id.* at 609. "Rather, the defendants' sole contract was with the listing broker. The plaintiff's claim for compensation for its efforts, therefore does not lie against the defendants." *Id. See also Valdina v. Martin*, 47 A.D.3d 1159, 849 N.Y.S.2d 364, 365 (2008), which held:

Even viewing the evidence in a light most favorable to plaintiff as the non-moving party, the record fails to establish any contractual privity, expressed or implied, between plaintiff and the sellers [citations omitted]. Rather, the sellers' listing agreement was with Old Ghent Realty and, according to the terms of such contract, they were obligated to pay the 6% commission only to Old

---

pensation that will be offered by Broker shall be as follows (*indicate a specific dollar amount, or the percentage of Broker's Compensation [as defined in Paragraph 3 of the General Conditions below], that will be offered for each applicable cooperating brokerage relationship. Also specify if Broker's company policy regarding compensation dif-*

*fers as to brokers who are not members of Broker's local Board of REALTORS®; excludes particular brokers, whether or not members of Broker's local Board of REALTORS®; or is otherwise limited*): $____ or *5%* of Broker's Compensation to subagents of Broker (*i.e., limited agents representing Owner*)[.]

Ghent Realty. "[P]laintiff's claim for compensation for its efforts, therefore, does not lie against the sellers" [citations omitted].

In *Geoffrey S. Matherson & Associates, Ltd. v. Calderone,* 190 Misc.2d 775, 739 N.Y.S.2d 876 (App.Term.2001), a broker showed MLS-listed property to the ultimate purchasers, yet "failed to establish that it had a contract, either express or implied," with the sellers. *Id.* at 877.

> Defendants' sole agreement was with the listing broker. Said agreement allowed the listing broker to appoint other MLS member brokers as "Broker's Agents" to assist in the sale of the premises. In addition, the MLS listing agreement was "An Exclusive Right To Sell" which required defendants to pay the listing broker "one total commission in the amount of 6%...." The agreement further provided that a sale by a broker who is the agent of the listing broker shall be a sale brought about by the listing broker. In view of the foregoing, it is apparent that plaintiff was acting as the "Broker's Agent" when it showed defendants' premises to the ultimate purchasers. Thus, plaintiff's claim for compensation due as a result of its efforts does not lie against the sellers.

*Id.* Long ago, the Arkansas Supreme Court reasoned similarly:

> It is also settled that, where a sale of real estate is made by an agent with the assistance of a subagent under an agreement to divide his commissions with him, such subagent is not entitled to recover the commission for the sale from the owner of the land, there being no privity of contract between them.

*McCombs v. Moss,* 121 Ark. 533, 181 S.W. 907, 908 (1916). Nor did the owner's awareness of the subagency "constitute the subagent the agent of the owner so as to entitle the subagent to look to the owner for compensation." *Id. See also Jones v. Best,* 134 Wash.2d 232, 950 P.2d 1, 4 (1998)(even if seller's and buyer's agents had a practice of sharing commissions, only seller's agent was entitled to a commission under the listing agreement; any claim by buyer's agent would be against seller's agent, not the seller).

Under these cases and general contract principles, even if Broker made a unilateral offer of subagency by multi-listing the property, and Appellant accepted the offer by procuring a buyer, the resulting contract was between Appellant and Broker, with any claim for compensation lying against Broker, not Seller. We find these cases persuasive and our research has not turned up a contrary holding. Therefore, any dispute about Appellant's subagency for Broker would not preclude summary judgment on Appellant's commission claim against Seller.

### Conclusion

▪▪▪ Appellant's subagency argument does not support its commission and lien claims against Seller, which fail for want of a contract between those parties. *Ham,* 711 S.W.2d at 190; *Kohn,* 567 S.W.2d at 446. Summary judgment was proper whether or not Appellant was the procuring cause of the sale; thus, we need not reach that issue or Appellant's other points.[7] Judgment affirmed.

LYNCH, P.J., and RAHMEYER, J., concur.

---

7. Point VII asserts that Appellant "was never put on notice" that its counterclaim was sub-

ject to a summary judgment motion. Assuming this true, *arguendo*, "we cannot reverse any judgment unless we find the error below materially affected the merits of the action. We are unable to make such finding in this case." *Springfield Chrysler–Plymouth, Inc. v. Harmon*, 858 S.W.2d 240, 244 (Mo.App.1993); Rule 84.13(b). Seller initiated the lawsuit, yet Appellant was the real "claimant" in summary judgment parlance. *See ITT*, 854 S.W.2d at 380–81. Appellant claimed a money commission and liened Seller's property in aid thereof; Seller petitioned to remove the lien because Appellant could not prove its underlying commission claim; then Appellant counterclaimed for the commission. The petition and counterclaim were not merely intertwined, they were two sides of one coin on which Appellant effectively bore the burden of proof. "Procedural rules are but the means through which we seek to ensure the fair and orderly resolution of disputes and to attain just results. They are not ends in themselves. For this reason, we do not generally consider noncompliance with rules or statutory procedures to warrant reversal in the absence of prejudice." *Heintz v. Woodson*, 758 S.W.2d 452, 454 (Mo. banc 1988). Appellant does not suggest, nor can we discern, how the alleged error affected the action's merits. Indeed, there was no final judgment until 14 months after this summary judgment was entered, and the record shows no complaint by Appellant to the trial court about a lack of notice on the summary judgment during this time.